IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAURIE A. JACOBSEN,

      Plaintiff,

v.                              Civil Action No.: RDB 05-2983

TOWERS PERRIN FORSTER &
CROSBY, INC. t/a TOWERS PERRIN,

      Defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>MEMORANDUM OPINION</u>

This action arises out of a Complaint that Laurie A. Jacobsen ("Plaintiff" or "Jacobsen") filed against Towers Perrin Forster & Crosby, Inc. t/a Towers Perrin ("Defendant" or "Towers Perrin").  The Amended Complaint alleges that Defendant failed to promote Plaintiff because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  The Amended Complaint also asserts causes of action for employment discrimination, breach of contract, wage payment and collection, and intentional infliction of emotional distress that are based on the law of the State of Maryland.

Currently pending is Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Although Defendant does not seek dismissal of Plaintiff's Title VII claim, set forth in Count One, Defendant contends that each of Plaintiff's state-law claims, set forth in Counts Two through Five, should be dismissed.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, Defendant's Motion to Dismiss is GRANTED-IN-PART and DENIED-IN-PART.  Specifically, Defendant's motion is GRANTED with respect to

1

Counts Two and Five and DENIED with respect to Counts Three and Four.

BACKGROUND

This Court reviews the facts of this case by assuming the truth of all facts alleged in the Amended Complaint and the existence of any fact that can be proven, consistent with the Amended Complaint's allegations. *See Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citation omitted).

In 1995, Jacobsen co-founded a company called Working Concepts with Brian McIntyre. (Am. Compl. ¶ 11.) Plaintiff describes Working Concepts as a "human resources and technology solutions consulting" company. (*Id.*)

In 2002, Towers Perrin acquired Working Concepts, which became the Working Concepts Division of Towers Perrin. (*Id.* at ¶ 12.) Mr. McIntyre was given the position of Division Head and Plaintiff was given the position of Director within this newly-created division. (*Id.* at ¶ 12.) Plaintiff contends that these assignments made her "second in command" at the Working Concepts Division. (*Id.* at ¶ 1.)

In 2003, Mr. McIntyre left his position as Division Head. (*Id.* at ¶¶ 11 & 15.) Defendant asked Steve Fein to find a replacement for Mr. McIntyre. Mr. Fein asked two male employees whether they were interested in the position of Division Head. (*Id.* at ¶ 16.) Both employees declined to take the position. (*Id.*) At this time, Mr. Fein did not ask Jacobsen whether she was interested in taking over Mr. McIntyre's role. (*Id.*)

On March 5, 2003, Plaintiff expressed interest in the position of Division Head to Mr. Fein. (*Id.* at ¶¶ 16-18.) Plaintiff contends that Mr. Fein responded that she would not be promoted to the position of Division Head because employees "would not accept [Plaintiff] in a lead role." (*Id.* at ¶ 18.) Plaintiff also contends that Mr. Fein "made various comments to her

2

that suggested that he was applying gender-stereotyped criteria in deciding whether to promote her, including that she was too blunt, too brash, and too demanding, she did not smile enough in meetings, and she was too direct and lacking patience." (*Id*. at ¶ 19.)

During the next few days, Mr. Fein considered restructuring the Working Concepts Division and moving forward without a Division Head. (*Id*. at ¶ 19.) Mr. Fein discussed with Plaintiff different roles that she might have within the restructured division. Plaintiff contends that each of the roles that she and Mr. Fein discussed had fewer responsibilities than the position of Division Head or Director. (*Id*. at ¶¶ 20 & 39.) Mr. Fein never offered Plaintiff a different job within the Working Concepts Division. (*Id*. at ¶ 20.)

On March 11, 2003, Plaintiff submitted her resignation from Towers Perrin effective as of April 11, 2003. (*Id*. at ¶¶ 22.) At the time of her resignation, Plaintiff indicated "she was not interested in having a lesser position." (*Id*.)

Plaintiff alleges that she was employed by Defendant pursuant to a written employment contract. (*Id*. at ¶ 38.) Plaintiff contends that the terms of this contract entitle Plaintiff to a "retention bonus" in the amount of $70,104 for the year 2003 and, if she is terminated for any reason other than cause, a *pro rata* share of that bonus. (*Id*.)

On November 2, 2005, Plaintiff filed a Complaint in this Court. On March 21, 2006, Plaintiff filed an Amended Complaint. On April 17, 2006, Defendant filed its Motion to Dismiss.

## STANDARD OF REVIEW

Defendant seeks to dismiss Plaintiff's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)

(citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-244 (4th Cir. 1999)).  The "Federal

Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he

bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) requires only a

"short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v.

Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v.

Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified

pleading standard" of Rule 8(a)).  Therefore, a Rule 12(b)(6) motion to dismiss "should only be

granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it

appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling

him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see

also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

DISCUSSION

**I.      Plaintiff's Claims.**

Jacobsen's Amended Complaint asserts five causes of action against Towers Perrin.  In

Count One, Plaintiff alleges that she was denied a promotion based on sex in violation of Title

VII.  (*See* Am. Compl. ¶¶ 24-30.)  In Count Two, Plaintiff asserts that her denial of a promotion

also violates Maryland Article 49B.  (*Id*. at ¶¶ 31-36.)  In Count Three, Plaintiff contends that

Defendant breached its written employment contract with her when it failed to pay her a *pro rata*

share of a retention bonus.  (*Id*. at ¶¶ 37-44.)  In Count Four, she contends that Towers Perrin's

failure to pay the *pro rata* share of her retention bonus also violates the Maryland Wage Payment

and Collection Statute, Md. Code Ann., Labor & Empl. § 5-501-509.  (*Id*. at ¶¶ 45-48.)  In

Count Five, Plaintiff alleges that Defendant intentionally inflicted severe emotional distress upon

4

her by denying her a promotion and restructuring the division to avoid promoting her.  (*Id.* at ¶¶ 49-53.)  As noted above, Towers Perrin seeks dismissal of the causes of action that are based on Maryland law (Counts Two through Five).  Towers Perrin has not requested that this Court dismiss Jacobsen's claim under Title VII (Count One).

## II.      Article 49B (Count Two).

Defendant argues that Plaintiff's cause of action under Article 49B of the Maryland Code should be dismissed because that Article does not give rise to a private right of action.  Plaintiff effectively concedes this point and "does not oppose the motion to dismiss [Count] Two."  (Pl.'s Opp. p. 1 n.1.)  Accordingly, Defendant's Motion to Dismiss Count Two of the Complaint is GRANTED.[1]

## III.     Breach of Contract (Count Three).

Towers Perrin requests that this Court dismiss Jacobsen's claim for breach of contract set forth in Count Three because she cannot satisfy the standard for establishing constructive discharge.  In response, Jacobsen maintains that Towers Perrin has failed to correctly identify the standard for constructive discharge.

There is no dispute that Plaintiff must establish that she was constructively discharged to advance her claim for breach of contract.  The contractual provision at issue allegedly entitles Plaintiff to a *pro rata* share of a "retention bonus" for 2003.  (*See* Comp. ¶ 38.)  This provision

---

[1]      *See Parlato v. Abbott Lab's*, 850 F.2d 203, 205 (4th Cir. 1988) (noting that "Article 49B itself does not create a private cause of action."); *Jordan v. CSX Intermodal, Inc.*, 991 F. Supp. 754, 756 n.1 (D. Md. 1998) (explaining that Article 49B "empower[s] only the Maryland Human Rights Commission to initiate litigation upon an employer's refusal to comply with the Commission's orders" and "does not create a private cause of action"); *Shabbaz v. Bob Evans Farms, Inc.*, 881 A.2d 1212, 1224 (Md. Ct. Spec. App. 2005) ("Unlike Title VII, article 49B does not create a general private cause of action in favor of victims of discrimination."), *cert. denied,* 887 A.2d 656 (Md. 2005).

is triggered "if Defendant terminated Plaintiff's employment for other than cause. . . ." (*Id.*)

Plaintiff admits that she resigned and therefore was not terminated. (*Id*. at ¶ 22; *see also* Pl.'s

Opp. p. 4.) As a result, the only way that Plaintiff can show that the contractual provision at

issue was breached is to first establish that she was constructively discharged and therefore

terminated for other than cause.

The parties dispute the appropriate standard for evaluating a claim of constructive

discharge. Plaintiff argues that the following standard applies:

> The law is well established: when an employee contracts to fill a
> particular position any material change in duties or significant
> reduction in rank will constitute a constructive discharge which, *if
> unjustified*, is a breach of contract.

*Weisman v. Connors*, 519 A.2d 795, 800 (Md. Ct. Spec. App. 1987) (emphasis in original;

citation and internal quotation marks omitted), *rev'd on other grounds*, 540 A.2d 783 (Md.

1988).) In contrast, Defendant contends that the applicable standard is as follows:

> [W]here a resignation is purportedly prompted by working
> conditions, the applicable standard to determine if the resignation is,
> in effect, a constructive discharge, is whether the employer has
> deliberately caused or allowed the employee's working conditions to
> become so intolerable that a reasonable person in the employee's
> place would have felt compelled to resign.

*Beye v. Bureau of Nat. Affairs*, 477 A.2d 1197, 1203 (Md. Ct. Spec. App. 1984), *cert. denied*,

484 A.2d 274 (Md. 1984).[2]

---

[2]     Most of the authority cited by Defendant to support its constructive discharge
analysis relates to Title VII and other federal employment discrimination statutes, not Maryland
state law. *See Taylor v. Virginia Union Univ.*, 193 F.3d 219, 237-38 (4th Cir. 1999) (evaluating
constructive discharge in the context of a Title VII claim), *abrogated on other grounds by Desert
Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Munday v. Waste Mgmt. Of N. Am.*, 126 F.3d 239, 244
(4th Cir. 1997) (same); *Amirmokri v. Baltimore Gas & Elec.*, 60 F.3d 1126, 1132 (4th Cir. 1995)
(same); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353-54 (4th Cir. 1995) (same); *Garner
v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987) (same); *Venugopal v. Shire
Lab's*, 334 F. Supp. 2d 835, 845 (D. Md. 2004) (same); *Yancey v. Nat'l Center on Institutions*

The nature of Plaintiff's employment relationship with Defendant determines which constructive discharge standard applies.  If Plaintiff contracted with Defendant to fill a particular position, then the applicable standard is the one identified by Plaintiff, *i.e.*, constructive discharge requires showing that the employer materially changed the employee's duties or significantly reduced her rank without sufficient justification.  *See Weisman*, 519 A.2d at 800. However, if Plaintiff's employment was merely at-will, then the appropriate standard is the one advocated by Defendant, *i.e.*, constructive discharge requires showing that the employer deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign.  *See Beye*, 477 A.2d at 1201.

At this early stage in these proceedings, this Court cannot determine which constructive discharge standard applies in this case.  Plaintiff does not describe the relevant terms of the "written employment contract" between Plaintiff and Defendant in the Amended Complaint, and neither party has attached a copy of that agreement to their pleadings or moving papers.  Plaintiff does, however, *suggest* that the written employment agreement provides that Defendant hired her

---

*and Alternatives*, 986 F. Supp. 945, 953 (D. Md. 1997) (same); *Raley v. Bd. of St. Mary's County Comm'rs*, 752 F. Supp. 1272, 1279 (D. Md. 1990) (same); *see also Shealy v. Winston*, 929 F.2d 1009, 1012-13 (4th Cir. 1991) (evaluating constructive discharge in the context of a claim brought under the Age Discrimination in Employment Act ("ADEA")); *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) (same); *Vaughn v. CMH Homes, Inc.*, 77 Fed. Appx. 660, 661 (4th Cir. 2003) (evaluating constructive discharge in the context of a claim based upon a failure to promote that was brought pursuant to 42 U.S.C. § 1981) (unpublished); *Rankin v. Greater Media, Inc.*, 28 F. Supp. 2d 331, 341 (D. Md. 1997) (evaluating constructive discharge in the context of a claim based upon violations of Title VII, ADEA, and Americans with Disabilities Act ("ADA")); *Gallimore v. Newman Machine Co., Inc.*, 301 F. Supp. 2d 431, 452 (M.D.N.C. 2004) (evaluating constructive discharge in the context of a claim brought under the ADA); *cf. Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir. 1993) (applying constructive discharge standard for purposes of evaluating causes of action in tort for intentional interference with contract and prospective advantage).

for a particular position.[3]  (*See*, *e.g.*, Pl.'s Opp. p. 6 ("[I]t is clear from the Amended Complaint

that plaintiff is alleging that, as in *Weisman*, her duties were going to be materially changed from

those she was hired to perform.").)  In its reply brief, Defendant disputes this suggestion and

asserts that Plaintiff's "employment was, at all times, employment at-will."  (Def.'s Reply p. 5.)

This appears to be a straightforward factual dispute, one that presumably will be settled by the

terms of the agreement between the parties.  It is not appropriate at this stage in the proceedings,

prior to any discovery, for this Court to resolve such disputes.  *See*, *e.g.*, *Presley*, 464 F.3d at 483

("The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" not to "resolve

contests surrounding the facts [or] the merits of a claim. . . .") (citations omitted).  Accordingly,

Defendant's Motion to Dismiss Count Three is DENIED.

## IV.    Wage Payment and Collection Statute (Count Four).

The parties agree that Plaintiff's cause of action under the Maryland Wage Payment and

Collection Statute, MD Code, Lab. & Empl., § 3-501, *et. seq*, is predicated on Plaintiff's breach

of contract claim:

> As Plaintiff's Amended Complaint correctly notes, the Statute
> requires employers to pay wages to employees for all work
> performed before the employees' employment terminates.  (Am.
> Compl. ¶ 46; Md. Code. Ann., Lab. & Empl. § 3-505.)  Further,
> bonuses, *such as the retention bonus at issue in this matter*, constitute
> "wages" that must be paid under the act.  (Am. Compl. ¶ 46; Md.
> Code Ann., Lab. & Empl. § 3-501.)

---

[3]      Although it is possible that Plaintiff's suggestion that she contracted for a specific
position may be, as Defendant claims, "misleading," it is consistent with allegations made in the
Amended Complaint.  *Cf. Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180
(4th Cir. 2000) (For purpose of evaluating a motion brought pursuant to Rule 12(b)(6), the court
assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be
proved, consistent with the complaint's allegations.") (citations omitted).

(Def.'s Mem. p. 7 (emphasis added); *see also* Pl.'s Opp. p. 6.)  Plaintiff's causes of action for

breach of contract and violation of the Maryland Wage Payment and Collection Statute both

require that Plaintiff establish a contractual right to the *pro rata* share of her 2003 retention

bonus.  To establish this contractual right, Plaintiff must first show that she was constructively

discharged.  Accordingly, as factual disputes with respect to the discharge claim presently exist,

*see* Discussion § III *supra*, Defendant's Motion to Dismiss Count Four is DENIED.

**V.      Intentional Infliction of Emotional Distress (Count Five).**

Towers Perrin requests that this Court dismiss Jacobsen's cause of action for intentional

infliction of emotional distress because Plaintiff has failed to allege facts that would show that

Defendant's conduct was extreme and outrageous.  In response, Plaintiff contends that her

allegations "may show . . . that when the position of Head of the Division became vacant,

defendant offered the position to several men but not to plaintiff, and when plaintiff asked to be

promoted to the position, defendant created an elaborate sham restructuring of the division rather

than promote a woman to the position."  (Pl.'s Opp. p. 7.)

In the State of Maryland, a claim of intentional infliction of emotional distress has four

elements: "'(1) The conduct must be intentional or reckless; (2) [t]he conduct must be extreme

and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the

emotional distress; (4) [t]he emotional distress must be severe.'"  *Manikhi v. Mass Transit

Admin.*, 758 A.2d 95, 113 (Md. 2000) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)).

Maryland courts have confirmed that the tort of intentional infliction of emotional distress is to

be used "sparingly" and only for "opprobrious behavior that includes truly outrageous conduct."

*Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992).  This Court

has previously acknowledged that intentional infliction of emotional distress "is rarely viable in

a case brought under Maryland law." *Robinson v. Cutchin*, 140 F. Supp. 2d 488, 494 (D. Md. 2001) (citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. Ct. Spec. App. 1995), *cert. denied*, 669 A.2d 1360 (Md. 1996)).

In this case, even after accepting all allegations in the Amended Complaint as true, it appears certain that Jacobsen cannot prove any set of facts in support of her cause of action for intentional infliction of emotional distress.  First, she fails to allege any facts to support a showing that Towers Perrin's conduct was extreme and outrageous.  It is well-established that conduct is deemed outrageous and extreme "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 380 A.2d at 614 (citations omitted).  Here, Plaintiff's claim is based on "defendant's conduct in creating a pretext of restructuring the department so as to avoid promoting plaintiff. . . ." (Pl.'s Opp. p. 7; *see also* Am. Compl. ¶ 50.)  This conclusory allegation is completely devoid of factual support.  Plaintiff simply alleges no facts that would support a showing that Defendant engaged in an "elaborate sham restructuring of the division", (Pl.'s Opp. p. 7), and thus fails to allege facts sufficient to support a showing that Defendant's conduct was extreme and outrageous.  *See, e.g.*, *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (in considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); *cf. Arabi v. Fred Meyers Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002) ("As inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law.").

Second, Jacobsen fails to allege sufficient facts to support a showing that the conduct at issue is intentional or reckless.  A defendant's conduct is intentional or reckless when "'he desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct; or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow.'" *Beye v. Bureau of National Affairs*, 477 A.2d 1197, 1205 (Md. 1984) (quoting *Harris*, 380 A.2d at 611)).  In this case, Plaintiff alleges that "Defendant's conduct was intentional in that it deliberately took steps to offer the promotion to men but not to plaintiff, and to avoid promoting plaintiff by creating an elaborate pretext of restructuring the department."  (Am. Compl. ¶ 51.) However, Plaintiff's accusation that Defendant engaged in an "elaborate pretext of restructuring the department" is wholly unsupported by specific factual allegations.  In addition, Jacobsen fails to allege any facts to support a finding that this elaborate pretext was intentional or reckless with respect to the infliction of severe emotional distress upon Plaintiff.  Accordingly, Defendant's Motion to Dismiss Count Five of the Complaint is GRANTED.

<u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED with respect to Counts Two and Five of the Amended Complaint and DENIED with respect to Counts Three and Four.  A separate Order follows.


Dated: October 31, 2006                              /s/_____
                                                     Richard D. Bennett
                                                     United States District Judge